I am pleased to court. My name is Stephanie Bond. Also with me as co-counsel, playing a very important but not speaking role, is Thomas Wilson. And I would like to reserve three minutes, if possible, for rebuttal. If one subsection of the California statute requires a mens rea that is less than recklessness, then it is removal from a crime of violence. Ms. Bond, let me ask you a question, which is a little bit off the topic, but nevertheless, I think you need to respond to. As I understand, your client was released from custody on October 14, 2016. You know, Judge, I think that could very well be, yes. Is that about this case? No, Judge, I don't think it does. And, well, Judge, because I think, first of all, this is an important issue for this court to decide that will assist the district courts and also... Well, we've got a lot of these kind of cases in front of us, and I'm not sure this one is any more important than the others we've got in front of us. So I'm trying to decide why this is mooted. Well, Judge, I don't believe it is mooted in the sense that, well, Judge, because this case, just because it took this long to get to this point, doesn't mean that Mr. Rivera-Mendez does not have the rights to have this issue heard as a crime of violence. I believe he got three years. Obviously, he was deported. And I guess that's my other issue. I hate to act like my clients will come back to the United States, even though... But clearly, we know that that happens. And if that happens in his future, whether or not he has a crime of violence, for a 60-level enhancement in the future is always an issue. I mean, obviously, we need to make sure we have the sentencing correct and the sentencing category correct. Does this decision affect his supervisor, Lisa, in any way? I don't believe it will, Judge, because, obviously, the supervisor Lisa said, just as he has to abide by all federal laws and not come back to the United States, basically, is the only condition of the supervisor, Lisa, at this point, because he has been deported. Okay, so I want to follow up, Judge, with this question. So what relief are you asking for today? Well, Judge, I'm asking for the fact that the crime of violence be taken off of his record, that it is not a crime of violence. It's basically going to be done with abuse. Judge, well, I don't know if you can give me... He can be released from custody. That's usually the best revenue for abuse, and this is the consequence of that. I mean, there are laws for that. It might be that we would order the crime taken off of his record, but if he's been released, do we have the right to clean up the record without releasing the prisoner? Well, Judge, I do think that this Court has an obligation to clean up the record and make sure that the record is correct. I guess what we're saying is I'm not sure that's enough. What we're saying is we're really here in habeas, and we've got to have a reason to do something because habeas has let me out, get my body out of jail. It isn't anything but get my body out and bring the body to me. That's what it's all about. And so at this point, bring the body to me if he's out of custody. Do I have anything? Well, Judge, again, I do think that this Court has the obligation because he's still under court supervision. I mean, even though his only role is the fact that he's on a supervisory release and he can't violate any federal law, he's still under supervision of the Court. And obviously that's something this Court decides, and then the district court decides whether or not they're going to modify the supervisory release anyway if he comes back in the United States. Obviously that's a big issue for the Court to take into consideration, the fact that he might have done a longer sentence because the judge made a mistake. Well, the longer sentence is over. We're talking about a supervisory release. Correct. And obviously, like I said, I hate to have people come back in the United States even after they've been deported, but clearly in this case we have that issue. And for all I know, it'll happen to him again in the future, and the district court needs to know what to do, and the district court needs to know if they were correct in what they did the first time around. So are you saying that the only import is on the opportunity or the chance that he comes back, he gets violated for supervisory release, it's going to have some sort of impact on the district judge's consideration of a sentence for the violation of supervisory release? Well, I don't believe that that's the only import, but I do believe that that is definitely a consideration as to why this court still needs to observe this issue. But even if we resolve the issue in favor of him with regard to the sentence, the sentence is over. So you're saying there's a half a banking time for the supervisory release? Well, I don't know that he's banking time. Maybe the district court will look at it that way if there's an issue with supervisory release, but I guess what we're asking is what import at this point, would any decision by this court be on the off chance, I fully understand there's a possibility that he goes back into his country, reenters, is arrested, is violated for supervisory release conditions. Well, and Judge, obviously he's still under supervisory release. He's still under this court, you know, the district court supervision, and so he still has a sentence even though he's not in custody. He's still under a court sentence. And if he were to violate his supervisory release, what would be the penalty to that? Well, it depends on how the violation was. What the violation was, it could be anywhere in his case between 6 and 18 months in custody. Okay, so there is additional time that he can spend in custody if he violated the supervisory release. There is mandatory time. It just depends on if it's a grade A, B, or C violation. But no matter what, he's going to do time in custody if he violates the supervisory release. And, yeah, so he may be in the district court. We'll keep that consideration. If this court reverses and remands the sentencing, maybe the district court will decide to take him off the supervisory release. I don't know what the district court will do, but he's still under our system, the criminal justice system because of supervisory release. Well, that's the reason for the question is because usually that comes with the idea that I'm going to get him out from prison and I think you've said if I do, it doesn't necessarily get him off of supervisory release. It's only based on a conjecture of what might happen in the future. That's why I wanted your input. So if I take you back to when she came to argue about it, this was something that worried me. But if I take you back, he did have a prior conviction for voluntary manslaughter under California Appeal Code 198A, right? That is correct, Your Honor. So manslaughter is an enumerated defense, is it not? It is. With an enumerated defense, it's got to be reckless, right? It does. Oh, I guess what I'm trying to figure out is why you've got a case. Well, Judge, I think these two-bit steps on the fact that there's the imperfect self-defense that the California statute has, the key in this case is the fact that he was originally charged with murder, went to a jury trial, and was found guilty of a lesser-included offense of voluntary manslaughter. Voluntary manslaughter under the California code includes the imperfect or unreasonable self-defense. They kind of refer to it as both because it's basically the jury saying everything, that he really believed he needed to do this. But with our case, and I don't know how you say it exactly, but I'm going to give it to you. I know, Debra, the jada aguiar suggests that 192A requires recklessness. Well, Judge, and if you look at the elements of the jury instructions, the statute in this case. You don't need to look at the jury instructions. I've got a case dead on that says the jada aguiar 192 requires recklessness, and then I've got another case that we're missing on that says recklessness is an element of contemporary manslaughter. And so, therefore, I've got recklessness on the one side, which is California law. I add recklessness, which is our contemporary manslaughter, which is the federal statute, and I'm done. Well, Judge, see, I would disagree because of the fact that we can't look at it. I've got a case dead on. Well, I understand that, and I understand that it's the recklessness, but you have also the issue of whether or not the statute is broad and overbroad. Well, for now, he's not going to be counsel because he's convicted of 192A, so we don't really have to look at much else. And it is word for word the federal statute. Well, Judge, the Supreme Court has said that you're not supposed to look at the words, and if there's no elements in the statute, the Supreme Court has said that. I'm not supposed to look at the words? Well, you're not supposed to look at the title. I don't look at the title. I'm reading 192A and comparing it with 18 U.S.C. 1112A. But, Your Honor. Because there's no consensual voluntary manslaughter in both of them. It is a word for word. Well, Your Honor, but since there is no elements of defense in the actual statute, it just says what it is, the crime, and then, you know, it's a heat of passion and so forth, the court, the only way the court can determine the elements is to look at the jury instructions in the case law. And that's what has been, and specifically I'm looking at Ortega-Mendez versus Gonzales, that says that when it's not clear in the statute what the elements are, and that is the key because the statute itself may say one thing, but if you look at the jury instructions and you look at the case law, there's the imperfect self-defense, which is the lesser included offense of a murder charge. It's not just the fact that it's a heat of passion. Specifically, under California law, it's heat of passion or imperfect self-defense, and the jury is given both of those options. And clearly, when we look at this case, we know it could have been heat of passion. I mean, the pre-sentence report tells us the basic general facts of the case. We know it had to have been something else for them to find it guilty, the lesser included offense of murder, because there was no heat of passion issue. This was a fight between three men according to the pre-sentence report. So clearly, it had to be the imperfect self-defense, which is not included in the federal statute. Just because I'm having a tough time. Byron, Gomez-Leon. Gomez-Leon considers your argument in 11. It says there's four ways to determine whether this is a crime of violence, four ways to determine what we need to do. One of the ways looks to 16A and 16B. One of the ways looks at 2L12B, which is exactly what we have here. And it says that's a perfect way to do it. You don't have to look at 16A. You don't have to look at 16B. All you've got to do is go to 2L1.2B. And if it's there, and then write a defense case over it. And then you're trying to say that simply because we have another case that says, well, you know, even though this might work, we ought to look and see whether all the definitions are right. So I would find, well, is the definition of one any different than the definition of another? That's why my colleague's question is dead on. They have the same language. They have the same point. Then I go to Quigada. Again, Aguiar. It says to me, under 9th Amendment law, in other words, if you're going to win, you've got to go above me. 192A is right closer. And then Gomez-Leon says, the federal law for contemporary manslaughter requires recklessness. So I got all the recklessness. I got the words the same. Am I not done? Well, Judge, I don't think you are done. And the reason why I don't think you are done is because this court, in my 28J letter, I have presented the fact that this court just recently decided to amend those of the DM, which was a manslaughter, a Florida manslaughter. And the panel that heard that case obviously didn't look at the fact that it's an enumerated offense because obviously the person was convicted of manslaughter under 2L. They took 16A or 16B, which is exactly what Gomez-Leon said they could do. But Gomez-Leon also says, I can put it 2L. And it's the same. It's not wrong. And that's what they did here. Well, Judge, Taylor says that if the statute is overbroad, that it's not a candidate. It's not overbroad under Gomez-Leon. Under Gomez-Leon, I got one of four ways to look at this, and it's not overbroad if I look at any one of those ways. Well, Judge, I would respectfully disagree because of the imperfect self-defense. There is no imperfect self-defense that's allowed under generic, under the common law, or under the federal statute. My law clerk yesterday pulled an AOR, and the AOR says that imperfect self-defense is a part of common law in various state statutes. Apparently it's a very, very common provision for voluntary manslaughter. Well, it's not in the federal statute. I'm not sure that it has to be directly in the federal statute. It doesn't have to be a one-to-one mapping. Again, the language is identical. What you said is, well, California allows this imperfect self-defense. Here it is. It's a very, very common provision. California is not an outlier on this. Well, Your Honor, we're supposed to be looking at the generic contemporary definition, and one of the ways we've always... Do we know that the feds have rejected imperfect self-defense as a possibility? I don't know that they've... How do you know that it's not there? Well, by looking at the jury instructions. That's how I know it's not there. By looking at the federal model jury instructions? Correct. Are those consistent across circuits? No, I don't think they are, Judge. I mean, I think some of them are very consistent, but, you know, I'm looking at what the Ninth Circuit and the District of Arizona has for jury instructions. And I think that's the issue for this court, because obviously, you know, if one does have it, you know, in a jury instruction...  I definitely didn't see it in the District of Arizona or the Ninth Circuit once. That's how I know that it's not included in there. Well, the problem that you have is that any time that we are trying to determine with jury instructions or with whatever it is we have in the state law, we're trying to determine what the state law suggests. If we're trying to determine what the federal law suggests, we're looking at what is our case law as to the federal law. That's why I gave you the case law as to the federal law. Gomez-Leon says this is it. It doesn't talk about your enumerated self-defense or any of that. It says this is the law. And so, therefore, at that point, you've got the federal law. You haven't got to look around. You've got it. It's put together with Gomez-Leon, and it should be applied. So, then, if I'm going to go look at the state law, it may not be right on. So, what happens to the statute is right on. And then, at that point, I've got to look how the state's interpreted that language. Is it right on or is it not right on? And that's the only time where you'd have those other, if you will, jury instructions or their, if you will, interpretation of the law. But as to the federal law, once you've got it, we haven't really got a lot to say, unless you want to go above us. Well, see, Judge, the problem is Gomez-Leon was out when this court decided Mendoza-Mendia. And so, clearly, I mean, and that was just a recent decision. I'm not saying that they overturned Gomez-Leon because that wasn't in there. But, clearly, they didn't follow and do the same things just a few months ago that they did in Gomez-Leon. I'm saying that we automatically have to go to the modified categorical and start looking at all the underlying information. And what we're saying is it's enumerated. So, why don't we go beyond that? What triggers it for us to go beyond the enumerated defense? And then, as Judge says, once that matches. So, once it matches, why do we need to go further than that? Well, because of the fact that, as this court has already signed it, and, again, let me give the case here for you, Ortega-Mendez v. Gonzalez, is if the elements of the statute are not in the statute, you have to look to the other jury instructions in case law. And in this case, if the elements are not in the statute, it just says, here is the language, basically, that the federal statute has for voluntary manslaughter. Right? So, they only look at the underlying case law. In California law, it just says it has an element of reckless actions. Federal law mirrors that. So, why won't we go any further? Well, Judge, and I don't concede that this is a reckless of standard. I think when you look at the elements under the jury instructions, it is not a reckless of standard. I believe it's less than a reckless of standard because of the fact that the person has an actual belief that what they are doing is correct and is necessary. And recklessness is an awareness and conscious disregard of the risk, is what this Court has said. Well, that's not what the California statute has for imperfect self-defense because for imperfect self-defense is that the defendant actually believed there was imminent danger. I mean, it makes sense in theory. The problem with it is that California will let you use this to go from murder to voluntary manslaughter. You know, that's a, you know, say, okay, we otherwise would get you to offer this. You're probably going to be convicted of murder. We wouldn't be having this conversation at all. Well, and I think that's true. And, you know, I mean, in Arizona, we obviously have self-defense where we have murder. We don't have an imperfect self-defense. And, yeah, you either were acting in self-defense and that was reasonable or you're convicted of murder. But see, that's the difference, though, that the statute is that California does have this imperfect self-defense where a person can say, I really thought my life was in danger, and I really thought I needed to kill this person in order to do that. And a jury can say, yeah, but we think your belief was unreasonable. We don't like your belief. And that's why I don't think it's a reckless abstainer under the statute for imperfect self-defense because it's not that she's aware of a risk. It could be even worse. Well, I actually think it's a lot less because of the fact that the person really honestly believes that they have to act in self-defense. You know, and it's a jury that's saying, yeah, we think that either one of those beliefs was unreasonable, not wrong, but mistaken or unreasonable. What would an Arizona jury do in that case? Well, I would hope as a defense jury that the Arizona jury would say it's self-defense. But not necessarily motive. And so your claim in Arizona might have been convicted of murder, and, again, we would not be having this conversation at all. It might have been. She thinks that California's adopters are a reasonable middle here, and I'm not sure it gets you out of your problem. But anyway, if we've taken you well over your time, I will allow you time for rebuttal. Thank you so much. Thank you. Ms. Lovett. Good morning, Your Honor. Can we please have the court. I'm Laura Lovett, and I represent the United States Attorney's Office in the District of Arizona out of Tucson. The district court correctly found that the defendant in this case had been convicted of a crime of violence and applied an A60 level enhancement to his sentence. This court should affirm. As the court has already pointed out, the defendant was convicted of voluntary manslaughter, which is an enumerated offense under the United States sentencing guidelines. That determines what approach will be taken in defining what a crime of violence is. We take the enumerated offense approach. In doing so, the next step is to determine whether the California statute is a categorical match to the federal generic definition. In this case, it is a categorical match because it uses the same language in the statute or because it uses the same elements. Because it uses the same elements, Your Honor. Looking at Gomez-Leon, Gomez-Leon examined the California manslaughter statute construction and determined that the defendant in that case was not convicted of a crime of violence because of the particular subsection that he was convicted under in the manslaughter statute. This case is different because the defendant in this case did not learn whether there's any type of jurisdiction that recognizes the imperfect self-defense. I am not aware of one, Your Honor. However, even the imperfect self-defense in California still defines an intentional killing. And as Your Honor pointed out, it is something higher than recklessness. It's an intentional killing. It's an intentional act. It is not lower than recklessness. The person that asserts an imperfect self-defense intends to kill that person. It's not reckless conduct. Even if it were, it would still be a categorical match under the guidance of Gomez-Leon. I'd also point out to the Court, I filed a 2018 letter this past Wednesday citing two people besignment, which is a California Supreme Court case that was decided earlier this year. While it's on the holding, the dicta is instructive in that it addresses the issue of imperfect self-defense and how that comes into play with murder and with the manslaughter statute. People besignment specifically notes that imperfect self-defense simply reduces a murder to involuntary manslaughter by the elimination of the element of balance, but it still remains an intentional killing. Okay. I would also point out that there has been some discussion of the Mendoza-Media decision, which this Court decided earlier this year. The defendant, Mendoza-Media, though, was convicted under a federal, I'm sorry, excuse me, a Florida manslaughter statute, and the problem with that statute was that it required a mandatory amount of less than recklessness, and that's why that conviction was not found to be a crime of violence in this Court. Again, that's very different than the situation that the Court has before them in this particular case where the defendant was convicted of voluntary manslaughter and slaughter under California law, which is the match. Does the government have a position on whether this court contains her jurisdiction, and are they the case when the prisoner has been released? Your Honor, I also neglected to check on whether the defendant had actually been released. I noted that he had a targeted release date of October of this year. I think that there are some things that the Court should consider with regard to who is in this particular case. This is a case that implicates the sentencing guidelines definition of crime of violence. As of November 1st, those guidelines have changed. There will still be the use of crime of violence, I believe, in the misdemeanor arena, but as far as moving forward with the inhumane offense of manslaughter, I'm not sure that this issue is going to come up again with any kind of frequency. Right, but he's just got some collateral consequences, right? I mean, if he comes back in, if we've run a judgment here, and he comes back in, this is on his record. But if we were to vacate this sentence and bring him back in, there would be different consequences for him. He still deserves the consequences, but we're here on habeas, and it's not clear that we've got somebody that we can order released from prison if we were to lie in favor of Mr. Rivera. I think that's true. You cannot order him released from prison. He already apparently has been released from prison. With regard to the collateral consequences of the supervised release term, even if this court were to overturn or, sorry, to bring back the case for resentencing, the defendant would very likely still face that three years term of supervised release, so I'm not sure that it's... Is there any way for him to violate the supervised release, except by coming back into the United States at this point? No, because if he's been deported... We've heard that he's already supervising his drug use in Mexico. No, we have not. So if there are no other questions, I will go ahead and conclude, Your Honors. As I stated before, the district court correctly found that the defendant in this case had been convicted of voluntary manslaughter under California law. That's an annually due defense under the guidelines. It's a categorical match to the federal generic definition, and based on that, this court should affirm. Okay, thank you so much. I'm looking forward to your response. Any more intervention? Just a brief response to the argument regarding the intentional act. Whenever somebody is acting in self-defense, it's always going to be intentional, but then it becomes the defendant's actions that criminalizes it. I mean, obviously, what is criminal is not the fact that he intended to kill somebody. What is criminal is the fact that he believed unreasonably that this was necessary, and that's where I believe that that's where he had a moment of less than recklessness. And I'm sure Rep. Street could say, I was reckless of you to have acted in this way, that you thought you could kill somebody intentionally when you really couldn't. Well, but see, recklessness, though, requires that he be aware of some kind of risk or intentionally requires that he intend to do this act. And I would go back to the Mendoza-Padilla case for the court because of the fact that that was dealing with a manslaughter by act, and I believe that that statute is very similar to the statute that's in front of the court today because that statute says that one commits an act. Well, that's intentional. They committed the act. But Mendoza-Padilla looked at the fact that the act is not lawfully justified or excusable, which is the exact same thing as the self-defense statute. They just call it something different. They called it manslaughter by act in Florida. California calls it imperfect self-defense. It's the same thing. That you believe you committed this act, be it that somebody died or you killed somebody. The issue is, was it legally justified or was it not? And in Mendoza-Padilla, this court said that is less than recklessness. That's the same statute we have here. We have it. So what I'm curious, when you're taking it, because we have to look at the point of view of your client, but actually the jury didn't believe him, and they found at the very least recklessness, in fact, may be even higher than recklessness. So you're arguing that it's less than recklessness, but there's nothing to support that in terms of what the jury was instructed on and found. They found him of the lesser included in voluntary will, correct, in manslaughter. So he had to have, for the imperfect defense, he had to have a knowledge and an acknowledgment that what he was doing was going to kill somebody. And he was, for lack of a better word, reckless in the assumptions he was making and why he had to, well, he was filing for it. He wasn't reckless. It was unreasonable. Well, is that less than reckless? I believe it is less than reckless, and I believe in Mendoza-Padilla, this court agreed that it's less than reckless because Mendoza-Padilla is the same thing. One commits an act resulting in death. The act is not lawfully justified or excusable, and this court said that is less than recklessness. There's nothing different with the imperfect self-defense. One commits an act. You think that you have to commit this act, but the jury thinks that something wasn't reasonable and it wasn't justifiable, and that's what makes it criminal versus a self-defense, and that's exactly what the manslaughter by act was in Mendoza-Padilla, is that you committed the act. We all agree you committed the act. It's just that it wasn't legally justified, except the difference between Florida and California is California has the statute that matches the federal, or it didn't in Florida. Well, again, I believe you have to look to the jury instructions because the elements are not in the statute. So you want us to go to the modified categorical when we have an integrated defense, and that's the bridge that I'm having difficulty with. It's like why should we go to the modified categorical? Otherwise, every time we'll go to the modified categorical. Well, Judge, I do think that the court in sentencing, and that's what I argued, was that this does need to be a modified categorical approach, and the reason why is because this was a murder case. This is not somebody who was charged with voluntary manslaughter or somebody who, you know, pled guilty to voluntary manslaughter. This is somebody who was charged with murder, went to trial, and the jury was instructed a certain way, and the jury found it to be voluntary manslaughter, which makes it different. So you think every time that the jury finds a defendant, guilty of a lesser included, even though it's an enumerated offense, we have to go directly to the modified categorical. Well, I don't know that we have to pick at that blanket of a rule, but in this case I definitely think that it has to go to the modified categorical approach because of the fact that we know it couldn't have been what was on the face of the statute because it wasn't a heat of passion. So there's no way, I mean, just looking at the statute, you know that that couldn't have been the issue. There's nothing in the facts that suggested to the pre-sentence report that this could ever have been a heat of passion, and that's the only thing under the California statute. When you just look at the face of the statute without the elements, that makes it a voluntary manslaughter is the heat of passion issue. We know that's not the case, so it had to have been something else, and so that's the reason why in this case I think it has to go to a modified categorical approach because categorically it is not a crime of violence because it's a lesser-included offense of murder. And we have to look past the actual title, according to the Supreme Court, of the statute to be voluntary manslaughter. And when we look past it, we see that the only thing that's possible is the imperfect self-defense. I think we understand your position. Thank you all for helping on the argument. The case of the United States versus Rueda and Moniz is submitted.
judges: Bybee, N.R. Smith, Kobayashi